**U.S. DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

QUENTIN SUTTLES,

                                  **Plaintiff,**                  **MEMORANDUM OF LAW**

**vs.**

                                                 **Index No. 1:24-cv-00098**

**CITY OF BUFFALO et. al.,**

                               **Defendants.**

### PRELIMINARY STATEMENT

Defendants move to preclude the Plaintiff from deposing non-party former mayor Byron Brown in this lawsuit arising from an alleged arrest and prosecution beginning on or about September 8, 2019. Respectfully, as outlined in our supporting Declaration and below, the Plaintiff has no basis or grounds to depose Mr. Brown in this action and we therefore bring this motion asking that this Court issue a protective Order to that effect.

### LEGAL STANDARD

While discovery is broad, it is "not boundless." Bouchard v. N.Y. Archdiocese, No. 04-CV-9978(CSH)(HBP), 2007 WL 2728666, at *3 (S.D.N.Y. Sept. 19, 2007). Rule 26 provides two limits to discovery applicable here. First, Rule 26(b)(2)(C)(i) mandates that the court limit "the frequency or extent of discovery otherwise allowed . . . if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ." Fed. R. Civ. P. 26(b)(2)(C)(i). This rule forms the basis for the "apex doctrine," which affords "senior corporate executives . . . 'an additional layer of protection' from the intrusion of depositions." Choi v. Tower Research Cap. LLC, No. 14-CV-9912(KMW), 2019 WL 6271324, at *2 (S.D.N.Y. Nov. 25, 2019). Second, Rule

26(c)(1) allows "[a] party or any person from whom discovery is sought" to move for a protective order, which "the court may, for good cause, issue . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

While it is generally true that, to be timely, an objection to a subpoena for a third party's deposition must be made prior to the return date of the subpoena. *See*, Estate of Ungar v. Palestinian Auth.*,* 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006). We respectfully submit that under the circumstances in this case where objections have been repeatedly communicated to the Plaintiff as to the deposition of Mr. Brown and the parties have discussed rescheduling while working through several other discovery issues, the Motion is timely as it was in Wisconsin Province of Socy. of Jesus v Cassem, 3:17-CV-01477 (VLB), 2019 WL 4928866, at *2 (D Conn Aug. 22, 2019)("Here, the original return date for the deposition subpoena was August 9, 2019 but it was extended until August 23rd when the deposition was re-noticed. *See*, U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*,* 238 F. Supp. 2d 270, 278 (D.D.C. 2002)("it is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled deposition")(internal citation omitted). Given the extension, the return date for the deposition subpoena is August 23, 2019. Thus, the objection to the deposition is timely because it was brought before Attorney Sandra Gersten's currently scheduled deposition.)(In re Welling, 40 F Supp 2d 491, 492 (SDNY 1999)("nevertheless, counsel conceded at oral argument that no new return date has been set following Judge Baer's order. In consequence, Ms. Welling has not yet failed to comply with the subpoena").

The Defendants therefore submit that this application is not "untimely" in that the objections have previously been raised to the Plaintiff and this Court, as set forth in our supporting Declaration, and in that the actual return date has not yet passed or been rescheduled.

Moreover, even if this request was considered to be "untimely", as the Southern District observed in "In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.), 581 F Supp 3d 509, 516 (S.D.N.Y. 2022), "district courts have broad discretion over the decision to quash a subpoena, and a number of courts in this Circuit have exercised their discretion to consider motions to quash that were not timely filed within the meaning of Rule 45 and applicable case law." Nike, Inc. v. Wu, 349 F. Supp. 3d 310, 320 (S.D.N.Y. 2018) (citations omitted), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *see also* Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) (permitting untimely motion to quash where there was no evidence of prejudice to the other side); Grigsby & Assoc., Inc. v. Rice Derivative Holdings, L.P., No. 00 Civ. 5056, 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (considering untimely motion to quash because circumstances, including clearly overbroad nature of subpoena, warranted overlooking timeliness issue); Olszewski v. Bloomberg L.P., No. 96 Civ. 3393, 2000 WL 1843236, at *4 (S.D.N.Y. Dec. 13, 2000) (considering untimely motion to quash because movant was "entitled to protection from discovery of his confidential health and disciplinary records").

## ARGUMENT

Here, the Court should issue a protective order because (i) Mr. Suttles has not alleged nor can he allege that Mr. Brown has anything to do with his claims, let alone unique personal knowledge about any relevant facts, (ii) the inconsequential information that he is seeking has been or "can be obtained from some other source that is more convenient, less burdensome, or less expensive," (iii) the apex doctrine affords Mr. Brown an additional layer of protection preventing Plaintiff from securing a vexatious and unjustifiable deposition from a non-party, and (iv) Plaintiff only wants Mr. Brown's deposition to annoy and burden him.

There are no allegations connecting Mr. Brown to this case. Plaintiff has not alleged and cannot allege that Mr. Brown played any role in this arrest or prosecution. There is certainly no allegation that he was present at any even relevant to this lawsuit, and no documentation or correspondence indicating that he has any involvement or knowledge in these particular incidents. Nor does he allege that Mr. Brown knows anything that would help a jury decide whether or not he in fact suffered the alleged mistreatment, and his discovery responses and the evidence in the record confirms he does not. Nor can Plaintiff point to any evidence connecting Mr. Brown to this case, let alone the conclusory and meritless allegations contained within the Complaint.

Here, the plaintiff seeks the deposition of the non-party and former mayor of Buffalo, Mr. Byron Brown. The Plaintiff's request to depose Mr. Brown is unfounded. Plaintiff has not provided evidence that the former Mayor has information which is otherwise unattainable or even relevant to the subject litigation, despite now having a full opportunity to do so through the pleading and discovery process. Therefore, subjecting the former mayor to an Examination before Trial would be improper and unnecessary.

The court may grant a protective order where "the proposed deponent has no personal knowledge of the relevant facts and no unique knowledge of those facts." Guzman v. News Corp., No. 09-CV-9323(BSJ)(RLE), 2012 WL 2511436, at *1 (SDNY June 29, 2012) (quoting Louis Vuitton Malletier v. Dooney & Burke, Inc., No. 04-CV-5316(RMB)(MHD), 2006 WL 3476735, at *12 (S.D.N.Y. Nov. 30, 2006)). Here, it is undisputed that Mr. Brown does not have unique knowledge relevant to Plaintiff's claims. Indeed, none of the pleadings or responses that Plaintiff has filed in this case has a single allegation that Mr. Brown had anything whatsoever to do with any of the events that purportedly gave rise to his claims. None of the testimony provided by a single witness ties Mr. Brown to any of those alleged events. Based on the pleadings and

testimony in this case alone, Plaintiff has not identified any basis to seek this non-party's deposition at all and should be forbidden from doing so.

Moreover, this Court should issue a protective order not only because the information Plaintiff seeks is irrelevant, but because it has already been or will be produced, i.e., "the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).  The Plaintiff has already deposed the parties, Captain Whitnight, and the former Police Commissioner. *See* Lin v. Benihana Nat'l Corp., No. 10-CV-1335(VM)(JCF), 2010 WL 4007282, at *2 (S.D.N.Y. Oct. 5, 2010) (precluding a high-level executive's deposition where other witnesses were available and could testify about a company's corporate structure).

For the deposition of a high ranking official to proceed there must be evidence that the official possesses knowledge of information that cannot be gained through other means. Where the party seeking discovery cannot show that, the deposition of a high-ranking city official would be improper. *See*, Torres v. City of New York, 959 N.Y.S.2d 859, 866 (Ct. of Claims 2013); *citing* Martin v. Valley Nat'l Bank, 140 F.R.D 291, 314 (SDNY 1991). Despite our repeated objections based on these grounds, and repeated offers to consider any evidence or argument from the Plaintiff which would support such a showing, they have offered no such evidence.

As of today's date, all party depositions have been completed. In addition, the deposition of the non-party witnesses Captain Jason Whitenight has been completed, and the retired Buffalo Police Commissioner Bryon Lockwood was recently taken on November 12, 2025.  Respectfully, and upon information and belief, neither the questioning nor answers given during these depositions provided any indication or evidence which would warrant the deposition of Mr. Brown. It should be noted that this would be the case regardless of whether Mr. Brown was a high

ranking governmental official. Stated plainly, there has been no allegation or evidence that Mr. Brown played any role whatsoever in the allegations underlying Plaintiff's lawsuit.

With that said, the need for limited access to high government officials through the discovery process is well established. In United States v. Morgan, (313 U.S. 409, 422  (1941), the Supreme Court indicated that the practice of calling high ranking government officials as witnesses should be discouraged. The Southern District of New York,  Lederman v. Giuliani, (No. 98 CIV.2024 (LMM), 2002 WL 31357810, at *1 (SDNY 2002), stated that "[a]s a general rule, depositions of high ranking government officials are impermissible unless it can be shown that: '(1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source and (2) the deposition would not significantly interfere with the ability of the official to perform his governmental duties.'" Marisol A. v. Giuliani, No. 95 Civ. 10533(RJW), 1998 WL 132810 (SDNY 1998), *citing* Martin v. Valley Nat'l Bank of Arizona, 140 F.R.D. 291, 314 (SDNY 1991).

The Southern District continued, stating that "[t]he first prong of this test has been strictly imposed to the extent that if a person does not have unique, personal knowledge, that is not obtainable elsewhere, then the deposition should not be permitted." *See* Id. at 3; *see also* Gibson v. Carmody, No. 89 Civ. 5358(LMM), 1991 WL 161087, at *1 (SDNY 1991).

As this Court stated, in Murray v. State Univ. of New York State Univ. Coll. at Brockport, No. 6:22-CV-06306 CJS CDH, 2025 WL 1872571, at *3 (WDNY July 8, 2025), "[s]uch officials "are generally shielded from depositions because they have greater duties and time constraints than other witnesses," and if courts did not impose appropriate limitations, "such officials would spend an inordinate amount of time tending to pending litigation." Lederman v. N.Y.C. Dep't of Parks & Recreation, 731 F.3d 199, 203 (2d Cir. 2013).

This Court continued, stating that "[a]ccordingly, 'to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.'" (Id. [emphasis in the original]).

Thus, "[t]he Lederman standard places a 'heavy burden' on the party seeking to depose a high-ranking government official." Murray, *supra* at 3, *citing* Chin v. N.Y.C. Dep't of Correction, 741 F. Supp. 3d 18, 25 (EDNY 2024). The Court stated that "[s]uch parties generally must demonstrate that the individual they seek to depose has 'unique personal information that is essential to their case or that the information they seek cannot be obtained from a less burdensome source.'" (Id., [denying motion to compel where the plaintiff "failed to show why any lingering questions could not be resolved through other discovery mechanisms"]; *see also* Moriah v. Bank of China Ltd., 72 F. Supp. 3d 437, 440 (SDNY 2014) ("Plaintiffs cannot demonstrate exceptional circumstances that would allow a deposition of [the subpoenaed government official] because they cannot establish that [the subpoenaed government official] has unique first-hand knowledge related in any manner to this litigation.")

Moreover, even evidence which "creates an issue of fact as to whether [the high ranking official] was the ultimate decision-maker with respect to the [alleged conduct]," (Murray, supra at 3), is not enough to satisfy the high burden of the party seeking to take the deposition. As the Western District of New York stated, in Murray, (Id), "[t]he fact that [a high-ranking government official] was the ultimate decision-maker regarding the alleged policy is not a sufficiently exceptional circumstance to compel a deposition." Boggs v. Town of Riverhead, No. 2:17-CV-05411 ADS SIL, 2020 WL 1929076, at *3 (EDNY 2020); *see also* Loc. 2507, Uniformed EMTs,

Paramedics & Fire Inspectors v. City of New York, 787 F. Supp. 3d 4 (SDNY 2025)(It is also of no moment that the Commissioner was the ultimate decision-maker responsible for decisions that may be relevant here."); In re New York City Policing During Summer 2020 Demonstrations, 677 F. Supp. 3d 206, 208 (SDNY 2023)("A plaintiff cannot obtain the testimony of a high official merely on the ground that the official was a policymaker.).

In In re New York City Policing During Summer 2020 Demonstrations, (Id at 209), the Southern District of New York further rejected the argument that "the former Mayor was 'consistently informed' about or 'personally approved' of certain policing strategies". The Court stated that this "does not justify the 'exceptional' remedy of deposing the former Mayor. It is hardly surprising that the former Mayor was involved in discussing, approving, or directing changes in policing strategies. But this does not show that testimony from the former Mayor as to his involvement has any relevance." The central issue "is what strategies were actually carried out by the [police] by persons with decision-making authority and whether they pass constitutional muster. There is no suggestion that the former Mayor's testimony is needed to determine what strategies were actually carried out". (Id., at 209). Moreover, "the plaintiffs ... have had access to numerous sources from which to determine what occurred at the protests and what command structure was in place to implement the policing decisions." (Id).

As the Southern District stated, in In re New York City Policing During Summer 2020 Demonstrations, (Id at 208), "[w]hile the rationale for the decision in Lederman rested in part on the official's current duties and time constraints, case law makes clear that the doctrine applies to 'former high ranking officials' as well". As such this doctrine would apply regardless of the fact that Mr. Brown subsequently stepped aside from his position as Mayor, but in particular given his

current position and responsibilities, and in light of the Plaintiff's failure to offer any evidence in support of their request or in opposition to the Defendants repeatedly stated position.

This is based "on the theory that '[s]ubjecting former officials decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service.'" (In re Terrorist Attacks on September 11, 2001, 2020 WL 8611024, at *12 (SDNY 2020); *accord* Presti v. City of New York, 609 F. Supp. 3d 204, 207 (EDNY 2022)("The doctrine applies to both former and current high-ranking officials.").

Here, Plaintiff fails to establish that Former Mayor Byron Brown has "unique personal information that is essential to their case or that the information they seek cannot be obtained from a less burdensome source".

Plaintiff has not asserted that Former Mayor Brown had any personal involvement in the case, nor that he had any personal information that is essential to proving the Plaintiff's case. Upon information and belief, former Mayor Brown is sought merely under the theory that he was the "ultimate decision maker", an argument that has been expressly rejected as such an allegation does not "sufficiently exceptional circumstance to compel a deposition".

Plaintiff's complaint contains no allegations tying Forner Mayor Brown to his alleged false arrest or the seizure of his firearm. Nor has Plaintiff, despite extensive discovery, identified any evidence of their personal involvement.

Moreover, as the Southern District of New York stated, in Universal Calvary Church v. City of New York, (No. 96-CV-4606, 1999 WL 350852, at *4 (SDNY 1999), "Plaintiff had full opportunity to determine ... whether [the Former Mayor] gave any orders or what order, if any, the police officers on the scene received following his call."

9

The Court noted that Plaintiff "took extensive depositions from other ... officers on the scene and had the opportunity to go into the question of whether the Mayor gave orders or supervised the officers during the incident. Despite this opportunity, they have not presented any evidence that the Mayor gave orders or supervised police officers during the incident." (Id).

Here, much like the circumstances found in Universal Calvary Church, the Plaintiff has deposed the former Police Commissioner, and multiple Police Officers in the pursuit of information to prove their allegations. Even following those depositions, the Plaintiff has not identified any evidence that Former Mayor Brown gave any orders, or directly supervised any of the officers in the alleged conduct.

Despite multiple opportunities, Plaintiff has not presented any evidence of former Mayor Brown's personal involvement in this case and therefore has failed to meet the "exceptional circumstances" standard. (Khan v. New York City, 757 F. Supp. 3d 327, 339 (EDNY 2024), See Chin, 741 supra at 24-25 [denying motion to compel depositions of high-ranking officials where plaintiff failed to establish that either official has unique personal information essential to the case]; Presti, 609 F. Supp. 3d at 208 [precluding deposition of former mayor where plaintiffs failed to demonstrate that former mayor had first-hand knowledge related to manager's claims against city for false arrest and excessive force]; Raba v. Suozzi, No. 06-CV-1109 (DRH) (AKT), 2007 WL 9709827, at *6 (EDNY 2007)(granting protective order where plaintiffs failed to establish that county comptroller had "knowledge regarding the decision to terminate the supplements at issue [that] is unique and personal").

WHEREFORE, Defendants respectfully requests a protective Order as set forth herein and in our supporting Declaration.

10

Dated:  November 16, 2025
          Buffalo, New York

                                        /s/ Robert E. Quinn
                                        Acting Corporation Counsel
                                        City of Buffalo Department of Law
                                        65 Niagara Square, 1100 City Hall
                                        Buffalo, New York 14202
                                        Ph:  (716) 851-4326